The next case call for oral argument is Eldridge v. Higgins. You've worked out how you're splitting up time and everything? Your Honor, Mr. McAfee has spoken briefly, he's just standing here. Mr. Parakash will lead us out of this case. Thank you, Counsel. Counsel? Please, Your Honor, my name is Todd Simeon, I represent the plaintiff, or the defendant of the plaintiff, Mr. Robert Higgins. In this case, essentially it boils down to one main issue, and that is did the court use its discretion in striking the pleadings of the defendant in this case? If we look at Rule 219, the court has discretion to do so. But we have to look at the reasonableness of the sanction. It's our position that this sanction is unjust. If we look at Boatman's Belleville v. Martin, there's a clear standard of, there's a clear rule when we look at, when the appellate court reviews this, we need to look at six main points to determine whether this was an appropriate sanction. A trial court must consider the following. The spies of the adverse party. This was a contract claim. There is no surprise what the contract is going to hold. And, plus, the plaintiff and the third-party defendant had already discovered, the defendant completed already discovered. Prejudicial effect. Had they finally taken the deposition? They have not. They did not. They did not complete the deposition. I do agree. They did not, were not able to complete the deposition. He never showed for any deposition, did he? Not just this last one. He missed, you know, I do agree. He missed two depositions. Just two? Missed two. When he missed those, he missed the first one. When he missed the first one, he did call my office. He reported to me that he was running late, that he was in the middle of traffic, and that he would be there as soon as he could. Mr. Walker and Mr. Parrot were there. And they did sit there for an hour. My client was coming in from St. Louis and got stuck in traffic. He did show up approximately five minutes after Mr. Parrot and Mr. Walker left. And we reset the depot. The depot was the second depot my client did not show because he had a medical issue, which was pickup. If you look at the briefs, even in Mr. Parrot's brief, he pointed out that with red eye, it's contagious up to 24 hours. And my client was diagnosed with red eye, or pink eye, sorry, not red eye. Is red eye worse than pink eye? I guess so. Is one of the factors the court consider in imposing a discovery sanction that parties track record in this case in providing discovery? Yes, they do. And isn't this the third time that your client's pleadings were struck in this case for discovery violations? It's not. In previous times, they'd already been. It's not discovery violations. The two times that they were struck in prior was because my client was in the process of retaining counsel. There was a lapse of a period of time where my client was out trying to find counsel to step in this case. And in the meantime, plaintiff filed a motion for depot failing to make an appearance. Well, he was trying to find counsel. Just another finer point on it, when this discovery deposition was first set, didn't the trial court make a docket entry or enter an order that he would strike his pleadings if he didn't show for it? In other words, he was warned in advance that that's what would happen. Yes. True. That is true. That is true. But, you know, again, we believe that if we look at the – the trial court must look at the summation of the events and can't just focus on my client. You have to look at both parties. There has been no discovery, absolutely zero discovery, answered by the plaintiff. We filed – we look at the record, and if we look at the record on page 162, we filed defendants serve interrogatories, which were never answered. 163, again, served interrogatories, and that was in 2002. Again, never answered. In December of 2002, page 187 of the record, you'll see that we, again, filed interrogatories, requests produced, never answered. Let me ask a question about those, and I have not reviewed the record yet, but did you file a request for sanctions as a result of any of those failures to answer? Did I? No. Or did anybody else? No. Okay. So that wasn't pursued? That was not pursued. So no request was made to the trial court to do anything about that? We were trying to work out discovery. As a general rule, 201K letters – I believe 201K letters were sent. However, we were not able to work out discovery. I agree with your previous statement that you have to look at what both sides did or didn't do. Sure. But do you dispute the other side's representation that your client disobeyed discovery orders in 10 of 12 case management conferences and failed to appear or canceled 14 deposition settings? I – 14? That's what they said. I don't know what the record shows. If I look – if we look at what the record shows, that the depositions were set with Terry and Mary Lou Eldridge four times. They didn't show. And that was on page 220. We know that we have to look at the other side. Our question is about your client. And if you look at my client, 1, 2, 3, 4, 5, 6, 7. Seven times. Seven. I'm sorry, how many times? Seven times. Seven times that he violated discovery orders or failed to show for depositions? Failed to show up for discovery and depositions, but it was a mutual agreement between both attorneys. So there were dates 2-28-07. I don't think it's in the record. But these were mutual continuances by both attorneys. I was in this case at that point in time. And this was mutual. It was because we couldn't – the attorneys couldn't get together on that specific date. It wasn't because, you know, Mr. Higgins was intentionally deceiving the court. This was trying to work out discovery between the attorneys. So if we look at the – if we look at the – going down the list, based on Bowman's – Bellville v. Martin, the nature of the testimony or evidence – testimony could be found at the court – at trial. There was no surprise in this case. They could have gone to trial without his deposition. If he didn't show up at the trial, well, most likely he's going to fail at trial. You know, again, the diligence of the adverse party in seeking discovery. Would you go to trial without his deposition if you were on the other side? Have I? Yes. Would you? If I was on the opposing side? Right. Depends upon the case. If it's contractual cases, there – you know, there may be – you know, there's many times I do probably smaller cases and I don't do depositions. You know, of course, I'm a younger attorney and probably not – not at season. So, you know, I probably take a little bit more risks. I take it at this last deposition when your client didn't show later, he alleged it was because he had pink eye. You were there anticipating him showing up at the deposition? I was anticipating him showing up. So he didn't notify you either because you wouldn't have had the other attorney sit there and wait not knowing it. So nobody knew he wasn't going to show up. Right. My understanding was he was going to show up. I believe I even talked to him that week and said, you know, are you going to show up? And he said, yes, I'm going to be there. So I had no knowledge at the time that he was not going to show up. And I think it's in the briefs that how long did everybody wait on that occasion? I'm not for sure how long that second time. You know, it may have been a half an hour, 45 minutes. But I know the first time that it was an hour. So it's not like everybody got up and left when he was a minute late. People waited. And everybody left still not knowing why he didn't show up. And I think the record shows that we did try to make contact with him. And he didn't pick up his cell phone. And I think in here somewhere you said he usually does. He normally does. So I was actually worried about him. Because, you know, my appearances with Mr. Higgins, you know, normally he picks up his phone. So there hadn't been some problem. And we did present the issues, the excuses, to the trial court. And said, hey, these are circumstances, both of them, beyond my client's control. It's not like he was trying to suffer. You know, he did actually show up the first time. It was late. It was an hour and five or an hour and ten minutes late the first time. But he did show up. And this case has been pending like nine years on the trial court? The case has been pending nine years. You know, there is no doubt. But both parties didn't pursue this case. It wasn't just my client. We sat and waited on bankruptcies. You know, the third party defendant filed bankruptcy in this case. So in this case, you know, we sat there and waited for the third party defendant to get out of bankruptcy. You know, there were some times where my client had a lapse in counsel. And there were reasons for that. You know, there's only, you know, by the record, there's only four attorneys who were in this case. They all left throughout the years. It's eight years. It's an eight-year trial. There's going to be some changeover in counsel. This is, you know, there were two attorneys on the opposing side. So, you know, over the course of eight years, there's going to be some changeover. And because of there's changeover, there is a delay of maybe two or three months with each counsel. Main point that we have is this is, in order to dismiss with prejudice is drastically sanctioned. Its nickname is the death penalty of all cases. It should be invoked only in cases where the party's actions show a deliberate unwarranted disregard of the court's authority. Employed only as a last resort. And after all, courts and other enforcement powers have failed to advance litigation. So it is the last resort. And, you know, we believe that this case does not warrant this death penalty. It does not warrant the death penalty in this case. Mr. Higgins is still available for testimony. You know, there were other means. You know, hit him with a pocketbook. He's a construction industry. You know, this is, if you hit him with a pocketbook, you know, he's going to show up. You know, we haven't seen, yes, my client didn't enter his appearance. In the meantime, trying to find counsel. But he thought he could find counsel. So, and we made excuses. If we look, one key case I would like to point out is Gallo versus Hinckley. In that case, the appellate reversed the dismissal based upon the offending party had complied with all other discovery. All the way up until 2004. If you need the citation, I can give you that. It's in the brief. It's in the brief. Appellate reversed the dismissal based upon the offending party had complied with all other discovery. Up until 2004, my client had completed all discovery. A written discovery. Not depositions. A written discovery. So, you know, up until that point in time, he complied. Again, plaintiff and the third party defendant failed to comply. Does the court have any other questions? I don't believe we do. Thank you, counsel. Thank you so much. Counsel? Justice, as always, everybody has two points of view. I think what's relevant here is understanding that I had the case on 10-29-07.  The numbers that are key here are 2-6-7-9-11-11-8. Those numbers stand for before I got into the case. This case was before Judge Byron. He had the case the entire time. Two defaults had been entered for discovery purposes by Judge Byron. On six occasions, or six different lawyers, the defendant had. And it's in the record, why we dealt with not paying his attorneys. They got out. They bailed out. Seven continued trial statements. Nine out of 11 disobeyed discovery orders. Eleven failed to appear or cancel deposition situations. And eight years in litigation. The day I appeared in this case, that was the history of this case already. I got ahold of Mr. Sidney, who was the sixth attorney for the defendant in this case. And I said, we've got to take depositions. We agreed on a date being December 28, 2007. I appeared in his office. Mr. and Mrs. Elridge here. Waited a reasonable time for his client to appear. His client didn't appear. I said, take my client's depositions. We're not moving forward without taking their depositions. He took their depositions. So we didn't wait just an hour. We waited more than that. Waited an hour for his client to show up. And he took two depositions prior to that. Both my clients. At the end of those depositions, waiting for a law for his client to show. Doesn't show. I checked with Mr. Sibbia later on. He tells me his client showed five minutes after I left. That's more than two hours after he was supposed to be there to start with. And no excuse. He just showed five minutes after I left. That was the reason for it. You dispute that some of these continuances of depositions was a mutual continuance? Your Honor, from the record, you really can't tell who's what. That wasn't the case. I'm not going to throw this up in front of the court. But I can tell you, if you disregard all this. All this. I'm saying. Judge Ruth didn't do that. Judge Ruth looked at the whole picture in totality of what's there. But I'm saying. Let's take the minute of the doubt. And discount everything that's here. Let's just look at the picture. This is how I heard my appearance. First deposition would show up. I'm not. I checked ahead of time. Everybody's going to be there. I'll bring my clients. My client's depositions are taken. His client doesn't show up. Then what I do. I file a motion with the court. And ask the court. Would they set a deposition at the courthouse. Of the defendant. Feeling that if he doesn't show up. I've got a judge there. We talked to Mr. Stibia. We compromised. It would be at his office. His office is about a block down from the courthouse. I had no problem with that. We agreed on a time and a date. Being. September 22, 2008. Mr. Stibia advised me. Afterwards he could make that date. Or no. I would reset it. I had no problem resetting it. As long as we reset short. It was reset for December 22, 2008. Appeared for the deposition. And I can tell you this. In this case. Mr. Stibia. Every time his office. Was very cordial. He. And I don't mean this in a derogatory way. He didn't know what was going on. He assumed his client was going to show up. Each and every time I was there. No question about it. In front of me. They called. Multiple calls to his client. Trying to locate his client. On his cell phone and stuff. Never had a call back. And I saw that at least. Four or five times. In both situations. So Mr. Stibia really. Tried to. Make this court date work. His client doesn't show up. When his client doesn't show up. At that time. Because I want to get a trial. I filed a motion. Strike his pleadings. Judge Ruth. On January 16th. On February 10th. And March the 6th. Have hearings. Those three hearings are this. On January 16th. He's there listening. To my arguments. Of what's going on. In the discovery labs. You can look at the transcript. Judge Ruth. Went into detail. On this. Judge Ruth. Inherited. Judge Byron's documents. From this time. After the first year. He went into detail. Explanation. On the record. And explained what was going on. There was a motion to vacate. His ruling. On February 10th. Occurred. Again. He went into detail. Listened to everybody's arguments. Denied the motion to vacate. Then on March the 6th. There was a motion reconsidered. The motion to vacate. And he did the same thing again. This judge had three shots. What's interesting in this. As I'm sitting there. The judge. Back on January 16th. Is ready to go into the damage hearing. Mr. Simi's client is still not there. And I made sure the record responded. Because he texted his client. His client 45 minutes later. Shows up. For the damage hearing. First time I've seen his client. In court. In a deposition or anything. And I had just been trying to do that. Since. October the 29th. When I got my case. If you look at that. In the situation. Just supporting all that. Like I said. And that's heavy right there to start with. 30 years of practicing law. I do a lot of cases. Defensively in both. I've never had that much confusion. With anyone. I've had some people. Pretty tactical. In trying to get things done. And not get them done. But in this situation. There's been three hearings. With a judge. Ruled. Per all the evidence. Ruled on the motion to vacate. Motion to reconsider. Two depositions set up. Of which. At least. Three hours. Or more. In those two. Together. Counting my clients. Deposition taken. On December the 28th. We're sitting there waiting. For his client to show up. Had the vacate motion. There's all kinds of. Mentioning about medical. Records and stuff. Not presented. Later on. They're presented. The judge. Even looked at the records. On what's there. They're not. They. Stamped or anything. I mean. This is not a situation. Where Judge Ruth. Was oblivious. Or got mad. And we have two judges here. It's interesting. If you think. Judge Byron. Had something out for the defendant. Or Judge Ruth. Had something out for the defendant. If one of them. Had it the whole time. It's what we have. Two circuit judges here. That are dealing with this. Completely. And between the two. There was three defaults. In this case. For discovery purposes. I think it's. The standard for you. Is whether or not. Judge Ruth. Abused his discretion. I think. He did not abuse his discretion. And I think. When you look. At how many attempts. And how many tries. And look at the record. Judge West. You asked. What I know about. The nine out of twelve. The reason. I got nine out of eleven. I put these before me. The twelve ones. With me. If you look. On page seventeen. Of our brief. We cite. For every one of these. Word that shows. In the record. It's not just something. We're. Zealous about. Arguing about. We cite each. And every place. In the record. Each one of these is. Supported by the record. And we believe. That. There's no question. That Judge Ruth. Looked at. In totality. Judge Ruth. Did a. Very good job. Of research. This. Of looking at it. He knew the record. Very clear. In front of him. In an argument. Of. Mr. Sibbia and I. In an argument. And he didn't. Abuse his discretion. And if there's any case. I've seen. That deserves. Those sanctions. This is it. Because this gentleman. Was given. Many, many tries. I gave him two tries. I waited. At Mr. Sibbia's office. It wasn't here. It wasn't my office. It wasn't some strange place. It was Mr. Sibbia's office. Mr. Parker. Thank you for asking me. Let me ask you another question. Yes sir. After you got in. It seems like there was some aggressive. Efforts. Yes sir. Mr. Sibbia claims that.      If there were previous violations. None of the other five attorneys. That were in the case. Were in the case. None of the other five attorneys. That were in the case. None of the other five attorneys. And even the sixth attorney. Mr. Sibbia. During the time. None of them filed. Any motions. As for any activity. Of the court. What so ever. I found none. I was looking at. When he brought that up. I was looking at it. In the record. There is nothing for that. I'm not disputing. What his word is. I want the word. It's in the record. I want to see it in the record. That my clients. When I took over. We moved it on. Mr. Miller. Who was the attorney for them. Before hand. In talking to him. He moved it on. It's not. It's not a question. It's a question. Of my clients. If my clients were abusive. Then. Any of the six. If he had six attorneys. Could have filed sanctions. Against them. For the court's attention. When you look at the record. The record is void. Totally void. From Judge Byron. Of anybody. Complaining about. Complaining. Doing something. Completely void. And again. I'm not coming. To the credibility. Of Mr. Sibbia. Or anything. He's an honorable person. I'm just saying. I don't see it in the record. And. It would be very clear. If that was going on. Because after. Two attempts. Myself. And being in the case. For about. Four or five months. I filed a motion. Because I want something. Moving on. In a case. Eight. Nine years. Is a long time. To do it. So. I question. If that even exists. And definitely. The record doesn't support that. I hope I answered your question. Thank you. Thank you. Counsel. Counsel. Police Court. Counsel. Jim Herron. For the third party. Defendant. Your Honor. We've got to put this in context. I think the court already did. This case. Predates. President Bush. Getting elected. It predates 9-11. It's been around forever. I mean. The standard is abuse of discretion. We can't sit here. And second guess. What Judge Ruth. Or Judge Byron. Saw for themselves. They were there. Saw what was happening. Had a sense of where this case was going.  The Eldridge's. Did something before. Mr. Walker and I. Got involved in this case. Or my client did. I can't say that. I don't know. I can't see any motions. Or sanctions. Or any sanctions. Or the court saying. Anything bad. About our clients. Mr. Civia's. Main point. Seems to be that. The court didn't. The trial court. Failed to try. Alternative sanctions. I see in the record. There were. Four times. The court. Gave him. The death penalty. And then. Commuted his sentence. That's four times. He had a chance. To come back in. This last time. Where he claims. He was sick. The court. Can look at the record. And make a determination. Whether he could have appeared. That day. Why didn't he offer to appear. A week later. Why didn't he offer to appear. In early January. Before this. Sanctions. We got no offers. By Mr. Higgins. To appear. For his deposition. When he clearly. Could have. At those times. There simply isn't. Any explanation. Why he didn't appear. The elders. Did appear. From our. Their depositions. They never asked. My client's. Deposition. He was down in Florida. He'd be happy. To come up here. And have his. Deposition. Taken. They say that. There should have been. A monetary. Sanction. Here. Well. I guess the court. Could have done that. But part of the problem. Is maybe the court. Considered that. That he. A couple of his lawyers. Got out. And they said it very frankly. In the pleadings. That he wasn't paying. His lawyers. So what's. What's there to say. That he's going to pay. Sanctions. To the other side. If he's not paying. His own lawyers. I think the court. Got a sense. And we can't second guess. The court. On that. That this man. Was gaining the system. I mean. Judge Ruth. Pretty frank. About it. He. If you read the transcript. Of the hearing. On the sanctions. He found. That there was no respect. For the court. I mean. The court has. The trial court. Has a right. To control his docket. I mean. This case. Is going on. For eight years. He has a right. To have a control. Over his docket. He has a right. And say. If a man. The litigant. Is not appearing. In court. When he's ordered to. When he's not appearing. For depositions. When he's ordered to. That the court. Can't stand for that. At some time. At some point. Enough is enough. Judge Ruth. Also said. There you got the sense. That Mr. Higgins. Was wasting the court's time. I mean. We have to take that. I don't know. How we can second guess. The court's view. Of those matters. In controlling his own docket. He says. There's no prejudice. My client. Is not accused. Of breaching. Anybody's contract. He's accused. Of interfering. With somebody's contract. So. That requires. A deposition. I need. To take. I need. To have taken. This man's deposition. To find out. What evidence. He has. To prove my client. Had anything. To do with his. Construction contract. Being breached. I don't think. There is any evidence. My client. Just came in. And built these people's home. After it was messed up. That's all my guy did. Instead. He gets sued. He's got that. On his credit report. And so. Justice. Delayed. Is harmful. To my client. It's prejudicial. Because he can't defend himself. By taking this deposition. And he's got this. On his credit report. He's a construction. Contractor too. So. It harms. My client's business. For this matter. To be drug on. And drug off. Because Mr. Higgins. Doesn't comply. With court orders. So. And it wastes. My client's money. He's paying me. To sit there. And do nothing. Basically. So. There is prejudice. In my client. I don't think there's any. Abuse of discretion. Here. By Judge Ruth. I don't know. How we can second guess. His view. Of the entire court file. Because that's what he did here. It wasn't just. For what happened. In December. Of 2008. Although. In my feeling. That would have been justified. Alone there. Simply because. Mr. Higgins. Did not come back. And say. He said. Well. I was sick. I couldn't be there. Okay. Well. Why didn't you come in and say. I'll be there next week. I'll be there the week after that. I'll be there the day of the hearing. You know. And he could have walked in. Specifically. He could have walked in. And Judge Ruth. And said. Well. My guy just appeared for a deposition this morning. Your Honor. I mean. He didn't offer any of that. So. I think that. That failure. To offer. To comply. With the court's orders. And the deposition notices. Gives the court. A real sense. Of Mr. Higgins. The attitude of the court. The court doesn't have any questions. I'll finish. I think. That's it. Thank you. Counsel. Counsel. A couple of main points.             And say. Well. My guy just appeared for a deposition this morning. Your Honor. I mean. He didn't offer any of that. To comply with the court's orders. I'll finish. I was involved with. Both Mr. Miller. And Mr. Walker. And I do agree. Mr. Walker pushed the case. He's. He's really the only. Attorney. In this case. That really pushed the case. Both. You know. We sat on this case. For a long period of time. Because nobody really wanted to push it. And.     I do. Do agree with that. But. My guy just appeared for a deposition this morning. Your Honor. I mean. He didn't offer any of that. I'll finish. But. Neither. The plaintiff. Nor the. Nor the defendant. You know. There was no movement on either side. For a long period of time. Mr. Emmons. If we look at. Look at the different attorneys. Mr. Emmons pushed the case. For at least a year.     But. By the time. You know. He's. He's. He's. He's. He's. He's. He's. He's. He's. And the minute Mr. Emmons. He was ready. To get compliance. You. Left the case. In. The record there's only four attorneys. I.  Don't see. In the record. Whether six attorneys. There's only four attorneys. Mr. Hunter. Talk about those four attorneys. Mr. Hunter, withdrew because. Mr. Higgins. And. And him. Got into disagreeable. Based. On his force proceeding. Mr. Emmons. Committed. A legal malpractice. Which is. Currently. Sitting. In Madison County. As a lawsuit. Pending against Mr. Emmons. So Mr. Emmons. Got out. Because he committed. A legal malpractice. Not on this case. But a different case. The only person. That really has. Complaint. Is Mr. Bass. Who. By. 06. 07. The construction industry. Was going. Under. And Mr. Higgins. At that point in time. Got to the point. Where he couldn't pay. So. You know. Mr. The only person. That really has a beef. Is Mr. Bass. And then. Then I got involved. In this case. So I am. The fourth attorney. Not the sixth. And. The other point. That I do want. To present. To remind the court. Look at the record. Because. It's. The two defaults. The two sanctions. That the court. Enters. Is based upon. Mr. Higgins. Failure. To. Appear. After. His counsel. Withdrew. Not. For discovery violations. For. Him. Failure. To. Withdraw. For. Him. Failure. To. Enter his. Appearance. That's. What the court. Not. Based upon discovery violations. Now. There were. Motions. Compelled. I believe. In 04. There were some. Motions. Compelled. By. Discovery.  Mr. Higgins. Within. I believe. 30 days. Comply with that. That. Motion. Compelled. So. It wasn't. Mr. Higgins. Subverting. The process. He did comply. He did answer. To just. The written discovery. So. In this case. We. Mr. Higgins. Would comply. With the. Discovery. And. We asked. The. Court. To. Reverse. I. Think. We appreciate. The briefs. And arguments. Council. Will. Take.